


Leslie Moskowitz

No. 11220064

SPC-Tucson

P.O. Box 24549

Tucson, Arizona 85734

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

FORT WORTH DIVISION

NO. 4:15-CR-151-16-O

4:18 Cv 713-O

UNITED STATES OF AMERICA,

    PLAINTIFF

VS.

LESLIE MOSKOWITZ,

    DEFENDANT

DEFENDANT'S OPPOSITION TO MOTION TO DISMISS DEFENDANT'S 28 U.S.C. SECTION 2255 MOTION AS UNTIMELY

Defendant Leslie Moskowitz ("Defendant" or "Moskowitz") hereby files this Opposition to the government's Motion to Dismiss Defendant's 28 U.S.C. 2255 Motion as Untimely.

I. Introduction

This Opposition will demonstrate that the government's motion is fatally flawed because it ignores the verified factual allegations of the 2255 Motion and supporting

Affidavit and Exhibits and thus the impact of attorney Anthony Green's ("Green") fraudulent concealment of his egregious malpractice and conflict of interest on the issues of claim accrual and equitable tolling. That evidence is more than sufficient to demonstrate that an evidentiary hearing is required to determine whether Moskowitz' claim is time barred under the applicable statute of limitations and related principle of equitable tolling. Vineyard v Dretke, 125 Fed Appx 551, 552-53 (5th Cir. 2005), Lexis 4232 at *3,*7-8 (district court erred in summarily denying petitioner's claim for equitable tolling based on retained state counsel's having affirmatively misled petitioner into believing that state post conviction was still pending; district court erroneously viewed claim as involving "mere attorney error or neglect" rather than "an attorney's misrepresentations [, which] may be grounds for equitable tolling" and district court also erred in rejecting claim based on affidavit by state counsel rather than recognizing that conflicting allegations of petitioner and counsel created credibility issue which "rarely" can be decided on affidavits alone'); United States v Wynn, 292 F. 3d 226, 230 (5th Cir. 2002) (petitioner's "allegation that he was deceived by his attorney into believing that a timely 2255 petiton had been filed on his behalf presents a "rare and extraordinary" circumstance beyond the petitoner's control that could warrant equitable tolling of the statute of limitations).

Defendant incorporates by reference his 2255 motion, affidavit and exhibits, his Response to Order to Show Cause and requests the court to take judicial notice of Defendant's

2

Opening Brief on Appeal filed by Green.

II. GREEN'S CONCEALMENT OF HIS EGREGIOUS MALPRACTICE BEFORE AND AFTER SENTENCING PREVENTED HIS CLIENT FROM REALIZING HE HAD BEEN HARMED AT SENTENCING BY HIS ATTORNEY.

The government contends that based upon the court's ruling and bench comments at sentencing Moskowitz must be conclusively charged with knowledge at that time that he had been harmed and that Green did the harm. Both of those facts are required to trigger the commencement of the one year statute of limitations set forth in Section 2255(f)(4). United States v. Kubrick, 444 U.S. 111, 62 L. Ed. 2d 259, 100 S. Ct. 352 (1979). This contention ignores the evidence before the court that Green set up Moskowitz to expect he would receive a 97 month sentence and that it was "worth a try" to attempt to get a reduction at the sentencing hearing. It also ignores Moskowitz' Declaration that he did not realize that Green had harmed him at sentencing; that he thereafter accepted Green as his appellate counsel; that he thereafter filed two Clemency Applications and never once suggested that he had been harmed because Green tried to get him a lower sentence. These facts are powerful evidence of Moskowitz' state of mind.

Indeed, Green's efforts at concealment went far beyond those initial lies. When the the PSR Addendum was received by Green, he knew or should have known he had made an egregious error in judgment and more importantly, that his error was sure to increase his client's sentence. He should have promptly met with his client and told him what he had done and that it would almost certainly increase his sentence from 70 to 97 months. He should have then moved to withdraw Objection

3

1 because it was below "an objective standard of reasonableness" to have filed it under the circumstances. Strickland v. Washington, 466 U.S. 668, 688. 80 L Ed 2d 674, 104 S Ct 2052 (1984). Likewise, he should have moved to withdraw as counsel for Moskowitz because his error in filing resulted in creating an actual conflict of interest with his client which promptly manifested itself. U.S. v. Culverhouse, 507 F. 3d 888, 892 (5th Cir. 2007) ("There is an actual conflict when the attorney knows that his clients interests diverge and must choose between the interests of multiple clients OR BE COMPELLED TO COMPROMISE HIS DUTY OF LOYALTY") (emphasis added); (Workmen v. Cullen, 341 F. 3d 1100, 1107 (10th Cir. 2003) (an actual conflict of interest exists if counsel is forced to make choices advancing interests to the detriment of his client); Hall v. U.S., 371 F. 3d 969, 973 (7th Cir., 2004) (an actual conflict exists if defense counsel was faced with a choice between advancing his own interests above those of his clients).

Instead of pursuing either of the above described available courses of action or attempting to negotiate a compromise with the Probation Officer and prosecutor, Green concealed his error and its effect from Moskowitz. It was this concealment, more than the filing of Objection 1, that threw the legal process off the tracks and cost Moskowitz the normally available effective replacement counsel who would have interviewed Moskowitz, read the PSR and the PSR Addendum, and tried to undo the damage prior to sentencing by bringing the facts to the attention of the government and the court. From there, even if attempts to withdraw Objection 1 failed,

Moskowitz would presumably have had the effective assistance of counsel who would have filed a 2255 motion based on ineffective assistance of counsel and sought resentencing with Objection 1 being treated as a nullity.

But for Green's concealment, the legal process would have functioned properly because competent legal counsel would have been available to discover Green's error and take the required steps to correct it. Instead, Moskowitz was in prison in Beaumont, Texas in late July, 2016 when his appeal was denied. He sought advice from the available jail house lawyers at the prison library and on their erroneous advice, filed a Petiton for Clemency on October 18, 2016 instead of a 2255 motion by July 26, 2017. Indeed, the jailhouse lawyer had the PSR, the Decision on Appeal and the Appellate Briefs and did not inform Moskowitz of Green's blunder or of the one year time limit on a 2255 motion.

As described in the Statement of Facts, Moskowitz never received a response to the 2016 Petition and filed a second one on January 16, 2018 after the election of the new President on the advice of a jailhouse lawyer.

It should be clear from a reading of both Clemency Petitions that Moskowitz had no idea that Green had caused his sentence to be increased in any amount by the filing of Objection 1. If he had thought so, that claim would have been included in both Petitions.

The government's reliance on the sentencing hearing ruling and bench comments as being the controlling fact, is contrary to the conclusion on similiar facts in Wynn.

Wynn was convicted of conspiracy to possess with intent to

distribute cocaine and aiding and abetting. Wynn's conviction became final on April 26, 1999. Absent equitable tolling, Wynn had until April 26, 2000 to file a 2255 motion. Wynn did not file his 2255 motion until January 2, 2001. Wynn devoted several pages of his 2255 motion to equitable tolling.

   The motion reported a series of telephone conversations between Wynn and his appellate attorney. In summary, in January, 1999, appellate counsel told Wynn he would file a 2255 petition for him. In May, 1999, his attorney told him he had filed the 2255 petition and would send him a copy. No copy was received so in June 1999, Wynn wrote the clerk of the court requesting a copy of his petition. Receiving no response, in October 1999, Wynn wrote the clerk of court and asked about the status of his petition. The clerk's office responded in mid October 1999 that their was no record of a petition having been filed on his behalf. That same month after failing to make contact with his attorney, he asked his father to do so. In the same month, his father did so and was told that "the reason the clerk did not find anything in the record to show a habeas filing was because he had filed the habeas petition directly with the Judge and was awaiting a response from the Judge and we must be patient."

   In August 1999, unable to reach his attorney, Wynn had his father go to court and purchase a docket sheet. It showed no filing on Wynn's behalf. In September, Wynn wrote a letter to the court explaining the above. By order signed October 16, 2001, the court made Wynn's letter a part of the record and informed Wynn that the court was not in a position to give him legal advice. The court further informed him that the

timeliness of a 2255 petition would only be considered if, and when, petitioner filed such a motion. Wynn's petition was filed 78 days later.

Finding that Wynn's claim accrued on October 23, 1999 when the court informed him that he had no 2255 petition on file, the district court denied his petition.

The court of appeals reversed holding that Wynn's attorney's misconduct constituted a "rare and extraordinary circumstance" beyond Wtnn's control that could warrant equitable tolling of the statute of limitations. Pertinent to the instant motion, it also held that the receipt of the court's letter was not conclusive because Wynn's attorney's deception continued after the letter was received. Id at 230. The court found that:

"This situation presents a close question as to whether Wynn was put on notice to make further inquiry despite the representations made by his attorney. The question is sufficiently close to warrant remand for factual findings as to the factual basis for Wynn's allegations and the reasonable- ness of Wynn's reliance of his attorney's representations and advice."

The court amplified it's decision to remand as follows:

Our conclusion that equitable tolling may apply in this case assumes that Wynn can establish that his attorney misled his father by telling him that a habeas petition had been filed on his behalf and that Wynn reasonably relied on his attorney's misrepresentations as to the status of his case..." at 230-31.

Likewise, Green's concealment of his malpractice continued after the sentencing hearing through the appellate process

7

(Appellant's opening briefhad a zero chance of success. It should have been an Anders brief but that would have engendered the scrutiny of the court) and thereafter until it was finally discovered in June, 2018. As in Wynn, there is an obvious question of material fact as to the impact on Moskowitz of Green's lies and concealment and the reasonableness of that reliance. As in Wynn, Moskowitz is entitled to an evidentiary hearing.

The government's assertion at page 4 that Moskowitz "provides no reason that he could not have, with diligence, known of his attorney's alleged error at the time of sentencing "disregards all of the evidence to the contrary in his moving papers and the obvious fact that he has made a reasonable showing that he was misled by his attorneys lies and concealment to believe that he had not been harmed at his sentencing.

The government's argument at page 5-6 that Green's concealment of the fact that his action in filing objection 1 was egregious malpractice (i.e., legal significance) that cost Moskowitz 27 months "is not a factual predicate to discovery of a claim" fails to recognize prevailing caselaw that such concealment is clearly material to resolution of the inquiry as to whether equitable tolling is applicable in this case. Indeed, attorneys lying and concealing the truth from clients casts a steep distinction in our caselaw as to the applicability of equitable tolling. In short, where a 2255 motion or other claim is time barred because an attorney gave bad advice or missed a filing deadline, equitable tolling will not apply. This is because unfortunately, we have too much of

that conduct to open the floodgates. Thankfully, we still regard lies and concealment by lawyers from their clients as "rare and extraordinary circumstances' such that they allow equity to intervene to prevent injustice.

By its citation to U.S. v Jackson, 470 F. App'x 324 (5th Cir. 2012) [misnamed by the government on page 5 as U.S. v Moskowitz], the government conflates a 19 year delay in filing a habeas petition because of bad legal advice into supposed authority for concluding that the court's ruling and bench comments at sentencing have to be conclusive on whether equitable tolling is available. Wynn indicates otherwise. Notably, the court in Jackson specifically identified Jackson's sworn statement that he had nagging concerns about whether his sentences would run concurrently throughout his lengthy state prison term. To the contray, Moskowitz has consistently stated he had no suspicion because the hearing took place as he was told to anticipate.

III. THE COURT SHOULD DENY THE MOTION TO DISMISS AND ORDER THE RESPONDENT TO FILE AN ANSWER TO THE 2255 MOTION AND SHOULD THEREAFTER SET AN EVIDENTIARY HEARING ON THE MOTION.

The courts of this circuit recognize that issues of claim accrual are usually deemed questions of fact to be determined based on evidence adduced at an evidentiary hearing. Vineyard, supra at 552-53; U.S. v Wynn, supra at 230-231.

In this case, the only affidavit and exhibits before the court have been submitted by the Defendant. In support of its motion to dismiss, the government contends in substance that Moskowitz knew or should have known at his sentencing hearing that he had been harmed and that Green was the cause. Upon

this premise, the government claims Moskowitz 2255 motion must be dismissed as time barred. As stated above, this assertion ignores the impact of Green's active concealment of his malpractice and conflict of interest both before and long after the sentencing hearing.

As the Supreme Court described in Lonchar v Thomas, 517 U.S. 314, 324, 134 L Ed 2d 440, 46 S. Ct. 1293 (1996), equitable tolling is a discretionary doctrine that turns on the facts and circumstances of a particular case, equitable tolling does not lend itself to bright-line rules, but we draw on general principles to guide when equitable tolling is appropriate. We must be cautious not to apply the statute of limitations too harshly.
"Dismissal of a first habeas petition is a particularly serious matter, for that dismissal denies the petitioner the protections of the Great Writ entirely, risking injury to an important interest in human liberty." Id. at 324....

..We and the district courts, guided by precedent, must examine each case on its facts to determine whether it presents sufficiently "rare and exceptional circumstances" to justify equitable tolling. Id at 324.

The equities here strongly favor Moskowitz. He was the victim of his own attorney who was sworn to be his zealous advocate. Green covered his mistake by deceiving Moskowitz that it was worth a try to get a lower sentence when there was no chance that Objection 1 would produce that result. This was deceit and conduct so far below accepted norms as to be both egregious. Green's silent coverup made it more difficult if not impossible for Moskowitz to know the filing of Objection 1

was not close to being worth a try and was the cause of his sentence being at least 27 months longer than it should have been.

As required by Kubrick when a party knows he has been harmed and who harmed him, which predicated are not here present, Moskowitz did seek advice when he lost the appeal but he got bad advice and did even suggest that he was harmed by Green at sentencing. His request was a generalized inquiry to look and see. He is not a lawyer. He had a right to trust in his attorney. He was thrown to the wolves as part of Green's concealment. He was cut off from effective counsel by Green's concealment until he eventually was informed in Tucson that Green was the cause of 27 extra months of imprisonment on June 15, 2018.

Conclusion

The papers before the court do not come close to conclusively showing that this proceeding is time barred. This being the case, the motion to dismiss should be denied, the government should be ordered to file an Answer to the 2255 motion, and thereafter an evidentiary hearing should be scheduled on all issues.

Dated this 20th day of May, 2019

_Leslie Moskowitz_
Leslie Moskowitz

Certificate of Service

The original of the foregoing

mailed on May 20, 2019 to:

11

Clerk, U.S. District Court

Northern District of Texas

Fort Worth Division

501 West Tenth Street, Room 310

Fort Worth, Texas 76102

Copy of the foregoing mailed

on May 20, 2019 to:

Amy Mitchell

Asst. U.S. Attorney

1100 Commerce Street, Third Floor

Dallas, Texas 75242

_____
Leslie Moskowitz

12

Leslie Moskowitz
#11720-064
SPC - Tucson
P.O. Box 24549
Tucson, Arizona 85734

Clerk U.S. District Court
Northern District of Texas
Fort Worth Division
501 West Tenth Street Room 310
Fort Worth, Texas 76102

